**LAQUER, URBAN, CLIFFORD & HODGE LLP**
Marija Kristich Decker, State Bar No. 207387
  Email: *Decker@luch.com*
225 South Lake Avenue, Suite 200
Pasadena, California 91101-3030
Telephone: (626) 449-1882
Facsimile: (626) 449-1958

Counsel for Plaintiffs, Trustees of the
Operating Engineers Pension Trust, et al.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND, TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST, TRUSTEES OF THE OPERATING ENGINEERS TRAINING TRUST, TRUSTEES OF THE OPERATING ENGINEERS LOCAL 12 DEFINED CONTRIBUTION TRUST, ENGINEERS CONTRACT COMPLIANCE COMMITTEE FUND, and SOUTHERN CALIFORNIA PARTNERSHIP FOR JOBS FUND,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>RMF CONTRACTING, INC., a California corporation doing business as R & M Electrical Contracting,<br><br>　　　　Defendant. | CASE NO.:  8:21-cv-1651<br><br>**COMPLAINT FOR:**<br><br>**BREACH OF WRITTEN COLLECTIVE BARGAINING AGREEMENT AND VIOLATION OF ERISA § 515 [29 U.S.C. § 1145]** |

---

1

**COMPLAINT**

1581448

Plaintiffs TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST, TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND, TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST, TRUSTEES OF THE OPERATING ENGINEERS TRAINING TRUST, TRUSTEES OF THE OPERATING ENGINEERS LOCAL 12 DEFINED CONTRIBUTION TRUST, ENGINEERS CONTRACT COMPLIANCE COMMITTEE FUND, and SOUTHERN CALIFORNIA PARTNERSHIP FOR JOBS FUND complain and allege:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this case pursuant to section 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") [29 U.S.C. § 1132(e)(1)], which grants the United States District Courts exclusive jurisdiction over civil actions brought by a fiduciary pursuant to section 502(a)(3) of ERISA [29 U.S.C. § 1132(a)(3)], to redress violations or enforce the terms of ERISA or an employee benefit plan governed by ERISA. Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in section 502(f) of ERISA [29 U.S.C. § 1132(f)].

2. This Court also has jurisdiction of this case pursuant to section 301(a) of the Labor Management Relations Act of 1947, as amended ("LMRA") [29 U.S.C. § 185(a)], which grants the United States District Courts original jurisdiction over suits for violation of contracts between an employer and a labor organization in an industry affecting commerce, without respect to the amount in controversy and the citizenship of the parties.

3. Venue is proper in this Court pursuant to section 502(e)(2) of ERISA [29 U.S.C. § 1132(e)(2)], and section 301(a) of the LMRA [29 U.S.C. § 185(a)], in that this is the district in which the Plaintiffs' Trusts (defined below) are administered, the signatory union maintains union offices, and where the contractual obligation is to be paid.

4. To the extent this Complaint sets forth any state law claims, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

## PARTIES

5. Plaintiffs, Trustees of the Operating Engineers Pension Trust, Trustees of the Operating Engineers Health and Welfare Fund, Trustees of the Operating Engineers Vacation-Holiday Savings Trust, Trustees of the Operating Engineers Training Trust, and Trustees of the Operating Engineers Local 12 Defined Contribution Trust (collectively, the "Trustees"), are the trustees of five express trusts (collectively, the "Trusts") created pursuant to written declarations of trust (the "Trust Agreements") between the International Union of Operating Engineers, Local Union No. 12 ("Local 12"), and various multiemployer associations in the construction industry in Southern California and Southern Nevada. The Trusts are now, and were at all times material to this action, labor-management multiemployer trusts created and maintained pursuant to section 302(c)(5) of the LMRA [29 U.S.C. § 186(c)(5)]. The Plaintiffs, as trustees of the Trusts, are "fiduciar[ies]" with respect to the Trusts as defined in section 3(21)(A) of ERISA [29 U.S.C. § 1002(21)(A)]. Plaintiff, Engineers Contract Compliance Committee Fund, is established by Local 12 in accordance with Section 6(b) of the Labor Management Cooperation Act of 1978 in order to improve job security and organizational effectiveness. Plaintiff, Southern California Partnership for Jobs Fund, is an industry-wide advancement fund established by the employers and Local 12. Collectively, all plaintiffs are referred to herein as the "Plaintiffs."

6. At all times material herein, Local 12 has been a labor organization representing employees in the building and construction industry in Southern California and Southern Nevada, and a labor organization representing employees in an industry affecting commerce within the meaning of § 301(a) of the Labor-Management Relations Act of 1947, as amended [29 U.S.C. § 185(a)].

///

///

7. At all times material herein, defendant RMF Contracting, Inc. doing business as R & M Electrical Contracting ("Defendant"), has been a corporation duly organized and existing by virtue of the laws of the State of California with its principal place of business located in Lake Forest, California.

## BARGAINING AGREEMENT AND STATUS OF PARTIES

8. On or about June 26, 2018, Defendant executed a Letter of Assent whereby Defendant agreed to be bound by the terms and conditions of the Anaheim Union High School District Community Benefits Agreement effective July 13, 2017 (the "PLA"), for work performed by Defendant on an Anaheim Union High School District construction project known as the Savanna High School project (the "Project").

9. Plaintiffs are informed and believe, and based thereon allege, that pursuant to the terms of the PLA, all contractors and subcontractors who have been awarded contracts for work covered by the PLA, or otherwise perform work on a project covered by the PLA, are required to accept and be bound to the terms and conditions of the PLA. Trustees are informed and believe, and thereon allege, that Defendant is bound to the PLA by working on the Project.

10. The PLA incorporates by reference certain collective bargaining agreements of the signatory unions. Local 12 is a signatory union to the PLA. Therefore, the terms and provisions of Local 12's applicable collective bargaining agreements and the related Trust Agreements are incorporated into the PLA.

11. Local 12's applicable collective bargaining agreement for the work performed under the PLA is the Master Labor Agreement (the "Master Agreement") in effect between Local 12 and the Southern California Contractors Association, Inc. ("Association"), a multi-employer association, and the incorporated Trust Agreements. The Master Agreement incorporates by reference the Trust Agreements. On or about June 19, 2018, Defendant signed written acknowledgments and acceptances of each of the Trust Agreements.

///

4
COMPLAINT
1581448

12. The PLA expressly provides that contractors signatory to the PLA adopt and agree to be bound by the written terms of the applicable, legally established, trust agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of, such trust funds for its employees. The PLA further provides that signatory contractors authorize the parties to such trust funds to appoint trustees and successor trustees to administer the trust funds and "hereby ratifies and accepts the trustees so appointed as if made by the Contractor."

13. On or about August 20, 2018, Defendant executed and delivered a written collective bargaining agreement (the "Agreement") to Local 12, whereby Defendant agreed to be bound by the terms and conditions, with certain exceptions, of certain written and existing collective bargaining agreements between various multiemployer associations and Local 12. In particular, Defendant agreed to be bound by the written Master Agreement in effect between Local 12 and the Association. The Agreement provides that Defendant shall be bound by the incorporated Master Agreement and any renewals or extensions thereto. The Master Agreement further provides that Defendant shall continue to be bound by the Master Agreement on a year to year basis after its expiration. On or about August 20, 2018, Defendant also signed written acknowledgments and acceptances of each of the Trust Agreements.

14. At all times since at least June 26, 2018, the Master Agreement has been an effective written collective bargaining agreement between the Association and Local 12. At all times relevant herein, Defendant was obligated to the terms and provisions of the PLA, Agreement, Master Agreement, and related Trust Agreements.

15. Defendant is an "*employer*," as that term is understood in the Master Agreement and related Trust Agreements.

16. Defendant is an "*employer*" as defined and used in section 3(5) of ERISA [29 U.S.C. § 1002(5)], and therefore, Defendant is "*obligated to make contributions to a multiemployer plan*" within the meaning of section 515 of ERISA [29 U.S.C. § 1145]. Plaintiffs are informed and believe, and thereon allege, that Defendant is also an

5
COMPLAINT
1581448

"*employer*" engaged in "*commerce*" in an "*industry affecting commerce*," as those terms are defined and used in sections 501(1) and 501(3) of the LMRA [29 U.S.C. § 142(1) and § 142(3)], and within the meaning and use of section 301(a) of the LMRA [29 U.S.C. § 185(a)].

## FIRST CLAIM FOR RELIEF

**Breach of Written Collective Bargaining Agreement and Violation of § 515 of ERISA [29 U.S.C. § 1145]**

17. Plaintiffs hereby incorporate by reference paragraphs 1 through 16 above to the same effect as if set forth here verbatim.

18. Section 515 of ERISA [29 U.S.C. § 1145], provides *"[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."*

19. Defendant is an "*employer*" as defined and used in § 3(5) of ERISA [29 U.S.C. § 1002(5)], and is *"obligated to make contributions to a multiemployer plan"* within the meaning and use of section 515 of ERISA [29 U.S.C. § 1145].

20. By the terms and provisions of the Master Agreement and related Trust Agreements, and at all times material herein:

   A. Defendant agreed to prepare and submit true, complete and accurate written monthly contribution reports ("Monthly Reports") to Plaintiffs on a timely basis showing the identities of its employees performing work covered by the Master Agreement, the number of hours worked by or paid to these employees, and based upon the hours worked or amounts paid to employees, the proper calculation of the fringe benefit contributions due for such employees. The Monthly Reports are either submitted in hard copy or electronically through an online reporting portal;

///

///

B. At all times material herein, Defendant has been obligated to submit its Monthly Reports and pay its contributions to Plaintiffs at Plaintiffs' administrative offices in Pasadena, California, on or before the 10th day of each successive month;

C. Defendant agreed to permit Plaintiffs and their agents to conduct audits of payroll and related records in order to determine if fringe benefit contributions have been properly paid pursuant to the Master Agreement and related Trust Agreements;

D. Defendant agreed to pay to Plaintiffs fringe benefit contributions, benefits and/or withholdings on a monthly basis, and at specified rates for each hour worked by, or paid to, applicable employees. These amounts are due and payable at Plaintiffs' administrative offices in Pasadena, California; and

E. Defendant agreed not to subcontract any part or portion of its work covered by the Master Agreement to any employer that is not also bound to an appropriate labor agreement with Local 12 (hereinafter referred to as the "Subcontracting Clause").

21. In or around July 2021, Plaintiffs completed an audit ("Audit") of Defendant's records covering the time period from June 2018, through September 2020 ("Audit Period"). The Audit revealed that Defendant breached the PLA, Master Agreement and Trust Agreements, and its statutorily-mandated obligations under section 515 of ERISA [29 U.S.C. § 1145], by failing to report and pay fringe benefit contributions to the Plaintiffs in the sum of $10,317.40 based on unreported hours, worked or paid, by Defendant during the Audit Period.

22. Plaintiffs are informed and believe, and thereon allege, that Defendant breached the Master Agreement by subcontracting and/or diverting work otherwise covered by the Master Agreement to Get Hooked Crane, Dave Leese Concrete, D&H Concrete, and A&B Concrete Services, employers who are not bound to an appropriate labor agreement with Local 12.

///

23. Plaintiffs have been damaged in an amount equivalent to the fringe benefit contributions which would otherwise have been paid to the Trusts had Defendant not subcontracted and/or diverted covered work to these non-signatory employers, totaling $1,187.21.

24. Plaintiffs are informed and believe, and thereon allege, that Defendant has failed to pay certain additional amounts of fringe benefit contributions not presently known to Plaintiffs. These additional amounts will be established by proof.

25. Defendant is a "*delinquent*," as that term is used in the Master Agreement and related Trust Agreements.

26. Plaintiffs are informed and believe, and thereon allege, that there is no legal excuse for Defendant's breach of its obligations under the PLA, Master Agreement and related Trust Agreements in violation of section 515 of ERISA [29 U.S.C. § 1145].

27. Defendant has failed to pay contributions and damages owed to Plaintiffs during the Audit Period. Pursuant to the Master Agreement, Defendant agreed that in the event Defendant failed to pay or to timely pay fringe benefit contributions or otherwise comply with the terms and provisions of the Master Agreement and related Trust Agreements, Defendant would be considered delinquent with Plaintiffs and would pay Plaintiffs the greater of $25.00 per month or ten percent (10%) of the total amount then due as liquidated damages for each delinquency. Liquidated damages of at least $1,150.46 are due for unpaid fringe benefit contributions due pursuant to the Audit.

28. Pursuant to section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], in any action by a fiduciary in which judgment is found in favor of the plan, the Court shall award the plan:(i) the unpaid contributions, (ii) interest on the unpaid contributions, (iii) an amount equal to the greater of (a) interest on the unpaid contributions or (b) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentage as may be permitted under federal or state law) of the amount determined by the Court to be unpaid contributions, (iv) reasonable attorneys' fees and costs, and (v) such other legal or equitable relief as the Court deems appropriate. For

purposes of section 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], interest on unpaid contributions shall be determined by using the rate provided under the plan or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986, as amended, 26 U.S.C. § 6621.

29. Pursuant to the written Operating Engineers Trust Funds Joint Contribution Committee Collection Policy & Procedures ("Joint Collection Policy") promulgated by the Plaintiffs' Trustees pursuant to the authority granted to them by the Master Agreement and/or Trust Agreements, interest on unpaid or untimely paid fringe benefit contributions shall be calculated at 8% per annum. The Joint Collection Policy also provides that liquidated damages shall be assessed at 10% of unpaid or untimely paid contributions.

30. Pursuant to the Master Agreement, related Trust Agreements, Joint Collection Policy, and section 502(g)(2)(C) of ERISA [29 U.S.C. § 1132(g)(2)(C)], Defendant owes Plaintiffs liquidated damages of at least $1,150.46. The exact amount of liquidated damages owed by Defendant to Plaintiffs will be established by proof.

31. Pursuant to the Master Agreement, related Trust Agreements, Joint Collection Policy, and section 502(g)(2)(B) of ERISA [29 U.S.C. § 1132(g)(2)(B)], Defendant owes Plaintiffs interest calculated at 8% per annum from the respective due dates on all unpaid or untimely paid fringe benefit contributions. The exact amount of interest owed by Defendant to Plaintiffs will be established by proof.

32. By the Master Agreement and related Trust Agreements, Defendant agreed to pay Plaintiffs all legal costs and audit costs in connection with the collection of any delinquency, whether incurred before or after litigation is commenced.

33. It has been necessary for Plaintiffs to engage legal counsel for the purpose of collecting said contributions and damages, and Plaintiffs are entitled to their reasonable attorneys' fees in connection therewith pursuant to the Master Agreement, Trust Agreements, Joint Collection Policy, and section 502(g)(2)(D) of ERISA [29 U.S.C. § 1132(g)(2)(D)]. The exact amount of the legal fees due and payable has not

been ascertained at this time.  These amounts shall be established by proof.

34. Plaintiffs incurred audit costs of at least $500.00, and may incur additional amounts of audit costs which shall be established by proof.

35. Pursuant to section 502(g)(2)(E) of ERISA [29 U.S.C. § 1132(g)(2)(E)], the Court may grant such other legal or equitable relief as the Court deems appropriate. As part of Plaintiffs' judgment, Plaintiffs shall request the Court to:

    A.    Order Defendant to post and deliver either a good faith deposit, or a performance bond issued in favor of Plaintiffs in an amount determined by the Court to be appropriate, and

    B.    Order the creation of a constructive trust on all applicable property and order the transfer of the applicable property to Plaintiffs, and

    C.    Order Defendant to pay to Plaintiffs all amounts due to Plaintiffs, including, but not limited to, the unpaid contributions, other damages for breach of contract, legal fees, audit costs, and other expenses and damages incurred.

## PRAYER

**WHEREFORE**, Plaintiffs pray for judgment against Defendant as follows:

1. For unpaid fringe benefit contributions of at least $11,504.61, plus additional amounts as proved;

2. For damages in amounts as proved;

3. For liquidated damages of at least $1,150.46, plus additional amounts as proved;

4. For interest in amounts as proved;

5. For audit costs of at least $500.00, plus additional amounts as proved;

6. For reasonable attorneys' fees and costs of suit incurred, in amounts as proved; and

7. For such additional relief as this Court deems just and proper, including, but not limited to, the following:

///

7.1   An Order for the creation of a constructive trust on all applicable property, and an Order for the transfer of the applicable property to Plaintiffs; and

7.2   For a good faith deposit or performance bond in favor of Plaintiffs in an amount equal to the total amount determined by this Court to be due to Plaintiffs, as proved.

Dated:  October 6, 2021    Respectfully Submitted,

LAQUER URBAN CLIFFORD & HODGE LLP

By: */s/ Marija Kristich Decker*
     MARIJA KRISTICH DECKER
Counsel for Plaintiffs, Trustees of the Operating Engineers Pension Trust, et al.

## WAIVER OF JURY TRIAL

Plaintiffs hereby waive a jury trial in this action.

Dated:  October 6, 2021    Respectfully Submitted,

LAQUER URBAN CLIFFORD & HODGE LLP

By: */s/ Marija Kristich Decker*
     MARIJA KRISTICH DECKER
Counsel for Plaintiffs, Trustees of the Operating Engineers Pension Trust, et al.